UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUMP BUFFALO GROVE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 2015 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| THE CINCINNATI CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After defendant denied plaintiff's insurance claim for pandemic-related losses, plaintiff filed a three-count second amended complaint alleging, among other things, breach of contract. Defendant has filed a motion to dismiss.[1]  For the reasons set forth below, the Court grants the motion to dismiss.

## I.     BACKGROUND

The following facts are from plaintiff's complaint, and the Court takes them as true.  The quoted portions of plaintiff's insurance policy are from the copy of the policy attached to defendant's motion to dismiss.[2]

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds $75,000.00.  [Docket 6 at ¶ 4].  Defendant Cincinnati Casualty Company is a citizen of Ohio (its State of incorporation and the location of its principal place of business).  [Docket 6 at ¶ 3].  Plaintiff Jump Buffalo Grove, LLC has one member, James Gondeck, who is a citizen of Illinois.  [Docket 6 at ¶ 2].  Plaintiff previously dismissed three other defendants, who also are citizens of Ohio.  [Docket 13].

[2] In its second amended complaint, plaintiff alleges that it was covered by policy number ENP 050 85 04.  [Docket 6 at ¶ 8].  Plaintiff attached a copy of the policy to its second amended complaint [Docket 6-1], as did defendant to its motion to dismiss [Docket 15-1].  Because both parties cite to the copy attached to defendant's motion (which copy is Bates numbered), the Court does as well.  The Court may consider the copy defendant attached, because it is referred

Plaintiff Jump Buffalo Grove LLC ("Jump Buffalo Grove") operated Rockin' Jump trampoline park in Buffalo Grove, Illinois. Plaintiff paid premiums to defendant for insurance policy number ENP 050 85 04 (the "Policy"). The Policy was in effect from October 30, 2019 to October 30, 2020.

The Policy states, among other things:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM
### (INCLUDING SPECIAL CAUSES OF LOSS)

\* \* \*

### SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

**1.** **Covered Property**

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a.** **Building**

Building, means the building or structure described in the Declarations, including:

**(1)** Completed additions;
**(2)** Fixtures, including outdoor fixtures;
**(3)** Permanently installed:

**(a)** Machinery and equipment;
**(b)** Building glass . . .;
**(c)** Signs attached to a building or structure . . .
**(d)** Awning and canopies;

**(4)** Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

---

to in plaintiff's complaint and is central to plaintiff's claims. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007).

**(a)**    Fire extinguishing equipment;
**(b)**    Outdoor furniture;
**(c)**    Floor coverings; and
**(d)**    Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

* * *

**3.    Covered Causes of Loss**

**a.    Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

* * *

**(2)**    We will not pay for "loss" caused by or resulting from any of the following:

* * *

**(b)    Delay or Loss of Use**
Delay, loss of use or loss of market.

* * *

**SECTION E. ADDITIONAL CONDITIONS**
* * *

**b.    Business Income and Extra Expense**

**(1)    Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by the direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

* * *

**(3)    Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that

prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

## SECTION G. DEFINITIONS

\* \* \*

**8.** "Loss" means accidental physical loss or accidental physical damage.

\* \* \*

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

\* \* \*

## BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – ILLINOIS

\* \* \*

## SECTION A. COVERAGE

\* \* \*

4

1.      **Business Income**

      a.      We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. . . .

\*   \*   \*

3.      **Covered Causes of Loss**

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

\*   \*   \*

5.      **Additional Coverages**

\*   \*   \*

      b.      **Civil Authority**

      When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

      **(1)**    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

      **(2)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

\*   \*   \*

**SECTION F. DEFINITIONS**

\*   \*   \*

6.      "Loss" means accidental physical loss or accidental physical damage.

\*   \*   \*

5

**8.**    "Period of restoration" means the period of time that:

   **a.**    Begins at the time of direct "loss".

   **b.**    Ends on the earlier of:

      **(1)**    The date when the property at the "premises" should be
               repaired, rebuilt or replaced with reasonable speed and
               similar quality; or
      **(2)**    The date when business is resumed at a new permanent
               location.

(Policy at CIC026, CIC028, CIC031, CIC041, CIC042, CIC061-062, CIC086-087, CIC093-094

/Docket 15-1 at 27, 29, 32, 42, 43, 62-63, 87-88, 94-95).  The Policy does not contain a virus

exclusion.  Plaintiff's Rockin' Jump location in Buffalo Grove was "Covered Property" under

the Policy.

   On January 27, 2020, the Secretary of Health and Human Services declared COVID-19 a

public health emergency.  The World Health Organization followed suit a few days later.  By

March 9, 2020, Illinois Governor Pritzker issued a disaster proclamation, including a declaration

that COVID-19 was a public health emergency.

   On March 13, 2020, Governor Pritzker signed an executive order "cancelling all public

and private gatherings in the State of Illinois of 1,000 or more people."  (2nd Am. Complt. ¶ 34).

By March 16, 2020, Governor Pritzker issued an executive order that closed "all bars and

restaurants for a two week-period, through March 30, 2020 and cancelling all public and private

gatherings in the State of Illinois of 50 people or more beginning on Ma[r]ch 18, 2020."  (2nd

Am. Complt. ¶ 35).  That order applied to fitness centers and health clubs.

   On March 20, 2020, Governor Pritzker issued a "Stay at Home Order."  (2nd Am.

Complt. ¶ 37).  That order required that places of "public amusement" (including amusement

parks and funplexes) be closed to the public. (2nd Am. Complt. ¶ 37). On April 1, 2020, Governor Pritzker extended the order to April 30. It was later extended through May 29, 2020.

Plaintiff alleges that the virus was a "dangerous substance" that was present at plaintiff's location. (2nd Am. Complt. ¶ 20). Plaintiff alleges that it made a claim for coverage on or about April 3, 2020. By April 15, 2020, defendant had denied coverage.

Based on these allegations, plaintiff asserts claims for declaratory judgment (Count I), breach of contract (Count II) and violation of 215 ILCS 5/155 (Count III). Defendant moves to dismiss.

## II.    STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to

be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Where a plaintiff alleges a breach of contract, a district court "may determine [the contract's] meaning as a matter of law" if "the contract is unambiguous." *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000). An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *McWane*, 224 F.3d at 584.

## III.   DISCUSSION

### A.   Breach of contract/declaratory judgment

In Count II, plaintiff asserts that it suffered losses "as a result of the government orders forcing it to close and/or limit its businesses" (2nd Am. Complt. ¶ 63) and that defendant breached the Policy by denying coverage for its losses. In Count I, plaintiff seeks a declaration that its losses are covered under the Policy.

The parties agree that Illinois law applies. Under Illinois law, "insurance disputes are governed by general contract principles[.]" *Sigler v. GEICO Casualty Co.*, 967 F.3d 658, 660 (7th Cir. 2020). A court "must construe the policy as a whole and 'take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (quoting *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 757 N.E.2d 481, 491 (Ill. 2001)). "If the words of a policy are clear and unambiguous, 'a court must afford them their

plain, ordinary and popular meaning.'" *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292-93 (Ill. 2001) (quoting *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 108 (Ill. 1992)). If, on the other hand "the language of the policy is susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer who drafted the policy and in favor of the insured." *Travelers*, 197 Ill.2d at 293.

### 1. Business Income

The Court first considers whether plaintiff has alleged a breach of the Business Income provision of the Policy. Plaintiff seeks coverage under the *Business Income (And Extra Expense) Coverage Form* for Illinois. The provision provides:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. . . .

(Policy at CIC086/Docket 15-1 at 87). That form defines "loss" as "accidental physical loss or accidental physical damage." (Policy at CIC094/Docket 15-1 at 95). Thus, the Policy covers lost "Business Income" caused by "accidental physical loss" or "accidental physical damage" during a "period of restoration." The term "period of restoration" is defined as "the period of time that:

> **a.** Begins at the time of direct "loss".
>
> **b.** Ends on the earlier of:
>
> > **(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
> > **(2)** The date when business is resumed at a new permanent location.

(Policy at CIC094/Docket 15-1 at 95).

Plaintiff alleges that the COVID virus was present at the premises. Plaintiff further alleges that the presence of the virus caused "physical loss or damage." (2nd Am. Complt ¶ 20). Plaintiff's allegation that the virus caused physical loss or damage is a conclusory allegation that is not entitled to be assumed true. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). What is entitled to be assumed true is plaintiff's allegation that the virus was physically present at the premises.

That allegation, however, is not enough to state a claim. As defendant points out, plaintiff has not alleged any *physical* damage or loss of property at the Covered Premises. The Policy applies to "accidental physical loss or accidental physical damage." As this Court has previously concluded:

> [t]he word *physical* modifies loss in 'physical loss' and damage in 'physical damage.' The plain meaning of physical is tangible or concrete.

*L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, Case No. 20 C 7784, __ F. Supp.3d __, __, 2021 WL 1688153 at *5 (N.D. Ill. April 29, 2021); *see also Windridge*, 932 F.3d at 1040 ("We have also explained that "physical" generally refers to tangible as opposed to intangible damage."); *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, Case No. 20 C 3169, __ F. Supp.3d __, __, 2021 WL 1208969 at *2 (N.D. Ill. March 31, 2021) ("physical" means "tangible, concrete"); *Travelers*, 197 Ill.2d at 312 ("In sum, this court now finds that, under its plain and ordinary meaning, the term "physical injury" unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension. . . . The plain language of the policies unambiguously states that the insurable event which gives rise to the insurer's

10

obligation to provide coverage is the *physical* damage to tangible property. The term "physical" limits the word "injury" in the policies' definition of "property damage.").

Plaintiff has not alleged any such concrete or tangible damage to property. Plaintiff alleges the presence of the virus at the property, but that does not constitute concrete or tangible damage. As this Court previously explained:

> The presence of virus in the air does not physically damage any of the property at the premises. Nor does the presence of the virus on surfaces *physically damage* them. The surfaces are not alleged to be tangibly altered. This is obvious from the fact that no repair is necessary. One does not replace, rebuild or repair a countertop (or a doorknob or a floor) because SARS-CoV-2 (or salmonella, MRSA or the flu virus) is present on the surface. One simply cleans the surface.

*L&J Mattson's*, __ F. Supp.3d __, __, 2021 WL 1688153 at *5.

Plaintiff alleges it was injured when it had to close its business due to shutdown orders issued by the governor in response to a pandemic. Plaintiff argues that the shutdown orders caused a "physical loss" in that plaintiff "was unable to use the premises." (Plf. Brief at 6/Docket 22 at 6). The Court disagrees. As this Court has previously explained, "[p]laintiff is correct that physical loss is not the same as physical damage, but that does not mean loss of use constitutes "physical loss" to property at the premises." *L&J Mattson's*, __ F. Supp.3d at __, 2021 WL 1688153 at *6. This Court agrees with Judge Feinerman, who made the distinction clear in *Chief of Staff*:

> [Plaintiff] is correct that the phrases 'direct physical loss' and 'direct physical . . . damage' are best read so as not to completely overlap and thereby render one or the other superfluous. But it does not follow that mere loss of *use*—without any tangible alteration to the physical condition or location of property at the insured's premises—falls within the meaning of either phrase. Read naturally, the two phrases can be read to exclude loss of use without rendering either superfluous. To illustrate, consider a thief who attempts to steal a desktop computer. If the thief succeeds, the computer is 'physical[ly] los[t]' but not necessarily 'physical[ly] damage[d].' If the thief cannot lift the computer, so instead of stealing it takes a hammer to its monitor in frustration, the computer would be physical[ly] . . . damage[d]' but not physical[ly] los[t].' Yet if the thief were only

> to change the password on the system so that employees could not log in, there would be neither 'physical . . . damage' nor 'physical loss,' though the computer would be unusable for some while. The Business Income provision might cover the first two cases, but it does not cover the third.

*Chief of Staff*, __ F. Supp.3d at __, 2021 WL 1208969 at *3; *see also Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021) ("A loss of use simply is not the same as a physical loss. It is one thing for the government to ban the use of a bike or scooter on city sidewalks; it is quite another for someone to steal it.") (Ohio law); *Image Dental, LLC v. Citizens Ins. Co. of Am.*, Case No. 20-cv-2759, __ F. Supp.3d __, __, 2021 WL 2399988 at *7 (N.D. Ill. June 11, 2021) ("Sometimes a loss of use can come from a physical loss. For example, an insured could suffer a loss of use of a car if it is totaled in a car accident, or if someone steals it. But there are times when a loss of use could come from something else, too. For example, a driver could drop his keys in Lake Michigan. That's a loss of the keys, but only a loss of use of the car. Under the policy in question, a *physical* loss is a *sine qua non* of coverage. A loss of use without a physical loss doesn't count."). This Court agrees. Plaintiff has not alleged physical loss to property at the premises, because plaintiff has not alleged any of the property at the premises is missing, destroyed or no longer intact.

This reading of the Policy is the only reading that makes sense in the context of the Policy's definition of "period of restoration." The Policy covers Business Income only during a "period of restoration," and the Policy defines "period of restoration" as the time between the loss and the earlier of: "[t]he date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." (Policy at CIC094/Docket 15-1 at 95). Plaintiff has not alleged that the pandemic required any of the property at the premises to be repaired, replaced or rebuilt (nor could it) or that the pandemic required a move to a new permanent location.

The Court concludes that plaintiff's allegation that it lost income due to government shutdown orders does not state a claim for breach of the Business Income provision, which requires either an "accidental physical loss" or "accidental physical damage" to property at the premises. This decision is consistent with other decisions in which judges dismissed insurance claims for COVID-19 closures. *Chief of Staff*, __ F. Supp.3d at __, 2021 WL 1208969; *Crescent Plaza Hotel Owner LP v. Zurich American Ins. Co.*, 520 F. Supp.3d 1066, 1070 (N.D. Ill. 2021) ("The plain wording of the phrase ['direct physical loss or damage'] requires either a permanent disposition of the property due to a <u>physical</u> change ("loss"), or <u>physical</u> injury to the property requiring repair ("damage").");  *The Bend Hotel Dev't Co., LLC v. The Cincinnati Ins. Co.*, 515 F. Supp.3d 854, 857 (N.D. Ill. 2021) ("[t]he virus does not cause 'direct physical loss or damage' to property. . . . [P]laintiff has not alleged any physical alteration or structural degradation to the premises, nor the need to 'repair,' 'replace,' or 'restore' any physical element of the property in order to reopen for business."); *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 508 F. Supp.3d 249, 254 (N.D. Ill. 2020) ("[Plaintiff does not allege that the suspension of operations was a result of any physical loss of or damage to the property. It does not allege that the physical property was changed or altered in any way. Instead, [plaintiff] alleges that the suspension of service was due to Governor Pritzker's Executive Orders, not for any reason related to the hotel property."); *T&E Chi. LLC v. Cincinnati Ins. Co.*, 501 F. Supp.3d 647, 652 (N.D. Ill. 2020) ("The Court agrees with the courts that have found that loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property."); *Sandy Point Dental PC v. Cincinnati Ins. Co.*, 488 F. Supp.3d 690, 693 (N.D. Ill. 2020) ("The words 'direct' and 'physical' which modify the word 'loss,' ordinarily connote

actual, demonstrable harm of some form to the premises itself, rather than forced closure of premises for reasons extraneous to the premises themselves[.]").

This decision is also consistent with decisions from the Circuit Courts of Appeals. *Mudpie, Inc. v. Traveler's Casualty Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021) (California law); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021) (Ohio law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021) (Iowa law). The Court is aware that a minority of courts have reached different conclusions, but the Court respectfully disagrees with those decisions.

Plaintiff also points out that the Policy does not contain a virus exclusion. That does not matter, however, unless the Policy already granted coverage. *Sigler*, 967 F.3d at 660 ("an insurance policy does not need to exclude coverage for something that it does not cover to begin with"). Because the Policy did not grant coverage, an exclusion was unnecessary.

### 2.     Civil Authority

Plaintiff also asserts that defendant breached the Civil Authority provision. That provision states:

> **b.     <u>Civil Authority</u>**
>
> When a Covered Cause of Loss causes *direct damage to property other than Covered Property* at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> **(1)**     *Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage*; and
>
> **(2)**     The action of civil authority is taken *in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused*

> *the damage*, or the action is taken to enable a civil authority
> to have unimpeded access to the damaged property.

(Policy at CIC087/Docket 15-1 at 88) (emphasis added).

As defendant points out, plaintiff has not included allegations of "damage to property other than Covered Property." As the Court explained above, the presence of the virus does not constitute *damage* to property. Plaintiff argues that civil authorities prohibited it from "accessing its property *for its intended purpose*." (Plf. Brief at 15/Docket 22 at 15) (emphasis added). That is not what the Policy language requires. Plaintiff has not alleged that access to the area immediately surrounding the premises (such as sidewalks, streets and neighboring buildings) was prohibited. Furthermore, plaintiff has not alleged the Governor issued the executive orders "in response to dangerous physical conditions resulting from the damage." Plaintiff has not alleged, for example, the Governor was worried a building could collapse due to, say, a cracked foundation or could explode due to a leaking gas line caused by, say, a tornado. The Court does not see how that omission could be cured, because the purpose of the Governor's Executive Order was to prevent human beings from congregating and spreading the virus from one to another, not to protect people from dangerous property damage. Accordingly, the Court agrees with courts that have dismissed claims for COVID-related losses under Civil Authority provisions. *See, e.g., Park Place Master Tenant, LLC v. American Zurich Ins. Co.*, Case No. 21 C 2471, 2021 WL 5038777 at *4 (N.D. Ill. Oct. 29, 2021); *Chief of Staff*, __ F. Supp.3d at __, 2021 WL 1208969 at *5-6; *Sandy Point Dental*, 488 F. Supp.3d at 694; *Bradley Hotel*, 508 F. Supp. 3d at 254.

Plaintiff has not stated a claim for breach of the Policy. Although it is not clear that plaintiff can cure the defects by amendment, Count II is dismissed without prejudice.

In Count I, plaintiff seeks a declaration that it is entitled to coverage under the Policy. For the same reasons that Count II is dismissed, Count I is also dismissed without prejudice.

**B.      Bad faith denial**

In Count III, plaintiff seeks relief under 215 ILCS 5/155. That section allows a court to "allow as part of taxable costs" reasonable attorney fees plus a penalty amount if the insurance company's denial of a claim was "vexatious and unreasonable." 215 ICLS 5/155.

"It is neither vexatious nor unreasonable to litigate a 'bona fide dispute concerning the scope and application of insurance coverage,' let alone to deny coverage based on a position that prevails." *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017) (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). Thus, Count III cannot survive the dismissal of Count II. Count III, too, is dismissed without prejudice.

## IV.      CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [14] to dismiss. The Court dismisses Counts I, II and III without prejudice. Although the Court does not see how plaintiff could cure the deficiencies in the second amended complaint by amendment, the Court will give plaintiff one opportunity to amend within 28 days. If it does not do so, this dismissal will automatically convert to a dismissal with prejudice and judgment will enter.

SO ORDERED.                                 ENTERED:   November 18, 2021

_____
JORGE L. ALONSO
United States District Judge

16